UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GOVIND,<br><br>           Plaintiff,<br><br>   v.<br><br>WARDEN JAMES S. HILL, et al.,<br><br>           Defendants. | Case No. 5:23-cv-01080-JFW-JC<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND, DENYING MOTION TO GRANT CIVIL SANCTION, AND DIRECTING PLAINTIFF TO RESPOND TO ORDER<br><br>[DKT. NOS. 20, 22] |

**I.    SUMMARY**

On June 7, 2023, Plaintiff Daniel Govind, who is proceeding *pro se* and has paid the filing fee, filed a Civil Rights Complaint ("Complaint" or "Comp.") with exhibits against the following Defendants who are or were California Department of Corrections and Rehabilitation ("CDCR") employees working at the California Institution for Men in Chino, California ("CIM"): (1) Warden James S. Hill; (2) Correctional Sergeant Murray; (3) Correctional Officer Zuniga; (4) Supervising Cook Gusman; and (5) Michell Mejia, RN. (Docket ("Dkt.") No. 1). Plaintiff sued all Defendants in both their individual and official capacities. (Comp. at 7-9 (as paginated on the Court's electronic docket)).

On June 6, 2024, the Court screened and dismissed the Complaint with leave to amend. (Dkt. No. 17). On July 29, 2024, Plaintiff filed the pending First Amended Civil Rights Complaint (or "FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983") against the same five Defendants in their individual and official capacities. (Dkt. No. 20).[1]

On February 21, 2025, Plaintiff filed a Motion to Grant Civil Sanction, which requests the Court grant his claim for monetary damages because he is completely disabled. (Dkt. No. 22).

For the reasons discussed herein, Plaintiff's First Amended Complaint is deficient and is dismissed with leave to amend, and his Motion to Grant Civil Sanction is denied without prejudice.

## II.   THE FIRST AMENDED COMPLAINT

The First Amended Complaint alleges the following:

While incarcerated at CIM on April 26, 2022, Plaintiff was performing his duties as a lead clerk in "Alpha Culinary" when inmate Monkres – who Plaintiff describes as a violent "lifer" inmate – brutally attacked Plaintiff, causing Plaintiff to sustain a broken wrist and shoulder, and head, neck and lower spine injuries. (FAC at 1, 4 (as paginated on the Court's electronic docket)). Defendants Murray, Zuniga and Gusman were on duty when the attack occurred. (FAC at 1).

After the attack, Plaintiff was lying on the concrete floor yelling for help when Murray asked him what happened. (FAC at 6). Plaintiff told Murray that Monkres assaulted him and pushed him to the floor and Murray replied "you are snitching on your fellow inmate." (FAC at 6, 10). Because of this, Plaintiff is now labeled as a "snitch" in Alpha Culinary. (FAC at 6).

---

[1] Plaintiff attached multiple exhibits to the First Amended Complaint ("FAC Ex."), including medical records. (See FAC Ex. C); see also Wilhelm v. Rotman, 680 F.3d 1113, 1116 n.1 (9th Cir. 2012) ("'When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [is] proper. . . .'" (citation omitted)).

2

1	Murray did not call for a stretcher or the paramedics for Plaintiff.  (FAC at
2	6).  Instead, Defendants Murray and Mejia ordered Plaintiff to get up and sit in a
3	wheelchair.  (FAC at 6, 8).  Because Plaintiff was in severe pain and could not get
4	up on his own, correctional staff helped him into the wheelchair.  (FAC at 6, 8).
5	Thereafter, Plaintiff was taken to medical, where Mejia thoroughly checked
6	Plaintiff and "described no injuries."  (FAC at 8; FAC Ex. C at 31-32).  Plaintiff
7	alleges he was left on a gurney for hours crying and calling for help before Mejia
8	returned and told him he was going to an outside hospital for reevaluation.[2]  (FAC
9	at 8; FAC Ex. C at 32, 35).  Mejia brought Plaintiff an orange jumpsuit and told
10	him to put it on, but since Plaintiff was unable to get up, a guard helped him put the
11	jumpsuit on.  (FAC at 8).  Plaintiff was then transported to Riverside University
12	Hospital ("RUH").  (FAC at 6, 8; FAC Ex. C at 41).
13	Plaintiff was examined at RUH and diagnosed with a closed fracture of the
14	distal end of the left radius, neck pain, and acute right-sided low back pain without
15	sciatica.  (FAC Ex. C at 45-47).  A CT scan of the head showed mild diffuse
16	cerebral atrophy and extensive paranasal sinus disease, but no acute hemorrhages,
17	acute infarction, or mass effect.  (FAC Ex. C at 42, 45).  A cervical spine CT scan
18	demonstrated multilevel degenerative changes of the cervical spine with associated
19	spinal canal and neural foraminal stenosis and a grade 1 anterolisthesis at C3-C4,
20	but no acute fracture.  (FAC Ex. C at 43-44).  Left wrist x-rays revealed a
21	"nondisplaced fracture of the distal radius, negative for dislocation, negative for
22	soft-tissue swelling, no mass."  (FAC Ex. C at 45-46).
23	The next day, Plaintiff was examined at the CIM medical clinic, and was
24	provided a wheelchair for one month and given two weeks off work.  (FAC Ex. C
25	at 32-34).

---

[2] Medical records reflect that Mejia consulted with a physician who advised Mejia to send Plaintiff to the emergency room for evaluation of any injury due to trauma.  (FAC Ex. C at 32, 35).

3

1  Plaintiff complains that Defendants Zuniga and Gusman failed to respond
2  after the attack and, when asked, they stated they "did not witness the crime."
3  (FAC at 7).  Plaintiff requested Zuniga and Gusman interview witnesses, but they
4  failed to do so.  (FAC at 7).
5  Since the incident, Gusman does not want Plaintiff to work on her shift.
6  (FAC at 7).  She will call "unducated volunteers" to help serve food to the general
7  population, but will not call Plaintiff.  (FAC at 7).  Plaintiff claims this is in
8  retaliation for his use of the prison grievance system.  (FAC at 7).
9  On or around May 2, 2022, Plaintiff sent letters to Defendant Warden Hill
10 and CIM's Investigative Services Unit ("ISU") requesting Monkres be disciplined
11 and removed from Alpha Culinary.  (FAC Ex. B at 24, 27).  On May 16, 2022, Hill
12 responded to the ISU letter, indicating the letter had been "forwarded to the CIM
13 ISU for further review."  (FAC Ex. B at 26).  Hill also stated:

> Per incident number 37924, you stated Inmate Monkres pushed
> you down, however there were no witnesses to support your
> allegations.  Following this incident, you were interview by Sergeant
> (Sgt.) M. Murray and signed a Compatibility Chrono demonstrating
> you did not have any safety concerns.  Additionally, following the
> receipt of your letter, Sgt. Murray interviewed you again and
> confirmed you do not have safety concerns remaining on Facility A.
> [¶] As a result, CIM considers this matter closed.  If at any time you
> fee! your safety is in jeopardy, it is recommended you advise a custody
> staff member as soon as possible.

(FAC Ex. B at 26).

A memorandum, dated May 24, 2022 and signed by Hill on June 28, 2022, states that in response to Plaintiff's complaints about staff misconduct related to the Monkres incident, an investigation was completed, there was no staff misconduct, and Plaintiff's administrative remedies had been exhausted.  (FAC Ex. B at 22-23).

On May 29, 2022, Plaintiff wrote a second letter to Hill, who responded that the grievance process was ongoing and Plaintiff would receive a response to his grievance. (FAC Ex. B at 25, 29). Nevertheless, Plaintiff complains Hill failed to investigate the incident or interview any witnesses. (FAC at 5, 11).

Plaintiff asserts that no official took any action against Monkres because Monkres is white and so are Hill, Murray, and other prison officers while Plaintiff is East Indian. (FAC at 10). Plaintiff also contends he was treated differently because of his age and disabilities. (FAC at 11).

Plaintiff has been left permanently disabled by the attack. (FAC at 12). His back is hunched, he walks with a cane, and he has restrictions on lifting, pushing, bending, walking and eating. (FAC at 12). He is unable to program due to his permanent medical disability. (FAC at 12).

On September 21, 2023, Plaintiff had a total right shoulder reverse arthroplasty at RUH to treat a rotator cuff injury. (FAC at 9; FAC Ex. D at 68-70). Due to severe pain, Plaintiff was unable to stand or walk on his own, and he states he was hospitalized for at least three months.[3] (FAC at 9). On September 28, 2023, a correctional officer told another inmate in Plaintiff's housing unit that Plaintiff was dead, and "they looted all [Plaintiff's] property." (FAC at 9).

Based on these allegations, Plaintiff raises due process, deliberate indifference, racial discrimination, and possibly other claims. (FAC at 5, 9-12). Plaintiff seeks compensatory and punitive damages as well as a declaration that the acts and omissions he describes violated his constitutional rights. (FAC at 13).

---

[3]The medical records attached to the First Amended Complaint do not support this allegation. These records indicate that Plaintiff was hospitalized at RUH from September 21-23, 2023 due to the surgery, and again between October 3-7, 2023 due to emphysematous cystitis, urinary retention, and sepsis due to a urinary tract infection. (FAC Ex. D at 49, 68). Plaintiff was also treated at Chino Valley Medical Center on September 28-29, 2023. (FAC Ex. D at 62-64).

## III. THE SCREENING REQUIREMENT

The Prison Litigation Reform Act "contains a provision requiring district courts to screen prisoner complaints before or soon after docketing if the case is 'a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" Nordstrom v. Ryan, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting 28 U.S.C. § 1915A(a)); Olivas v. State of Nevada, 856 F.3d 1281, 1283 (9th Cir. 2017) (per curiam). "A court must dismiss a complaint if it is 'frivolous, malicious, or fails to state a claim upon which relief may be granted," or if it "seeks monetary relief from a defendant who is immune from such relief.'" Nordstrom, 762 F.3d at 907 n.1 (quoting 28 U.S.C. § 1915A(b)); Olivas, 856 F.3d at 1283. "The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" Nordstrom, 762 F.3d at 907 n.1 (citation omitted); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (per curiam). "Section 1915A applies whether or not the prisoner's claim is brought in forma pauperis." O'Neal v. Price, 531 F.3d 1146, 1152 (9th Cir. 2008).

"Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Nordstrom, 762 F.3d at 908. Dismissal for failure to state a claim is appropriate if Plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013). Although Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555; Iqbal,

556 U.S. at 678, "[s]pecific facts are not necessary; the [complaint] need only give the [defendants] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555.

In considering whether to dismiss a complaint, the Court must accept the factual allegations of the complaint as true,[4] Wood v. Moss, 572 U.S. 744, 755 n.5 (2014); Erickson, 551 U.S. at 93-94, construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). *Pro se* pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. Erickson, 551 U.S. at 94; Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal."). Dismissal for failure to state a claim can be warranted based on either the lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. Pell v. Nuñez, 99 F.4th 1128, 1133 (9th Cir. 2024). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. See Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013), cert. denied, 573 U.S. 916 (2014).

---

[4] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017). Likewise, the Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006); Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).

## IV. DISCUSSION

The Court has reviewed the First Amended Complaint under the aforementioned standards and concludes that the First Amended Complaint is deficient and must be dismissed with leave to amend.

Initially, Plaintiff has sued each Defendant in both their individual and official capacities. (FAC at 3-4). An official capacity suit against a public employee is equivalent to a suit against his or her employer. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Hartmann, 707 F.3d at 1127. In this case, the named Defendants are employees of the CDCR, which is a state agency. Holley v. Cal. Dep't of Corrs., 599 F.3d 1108, 1111 (9th Cir. 2010); Brown v. Cal. Dep't of Corrs., 554 F.3d 747, 752 (9th Cir. 2009). The Eleventh Amendment prohibits suits against a state or its agencies or departments for legal or equitable relief, Papasan v. Allain, 478 U.S. 265, 276-77 (1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and it bars federal court damages actions and requests for retrospective declaratory relief against a state official in his or her official capacity unless the state has waived its immunity or Congress has overridden that immunity.[5] Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Green v. Mansour, 474 U.S. 64, 73-74 (1985); Graham, 473 U.S. at 169-70; see also Lund v. Cowan, 5 F.4th 964, 969-70 (9th Cir. 2021) ("The Eleventh Amendment does not permit retrospective declaratory relief."), cert. denied, 142

---

[5]Plaintiff requests "a declaration that the act[s] and omissions described herein violated [Plaintiff's]" constitutional rights. (FAC at 13). This request for declaratory relief is retrospective in nature as it seeks only to remedy a purported past wrong. Green, 474 U.S. at 73; Lund v. Cowan, 5 F.4th 964, 970 (9th Cir. 2021), cert. denied, 142 S. Ct. 900 (2022); see also Papasan v. Allain, 478 U.S. 265, 278 (1986) (Under the Eleventh Amendment, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant."); Mwasi v. Romero, 2023 WL 2628085, *6 (C.D. Cal.) ("Plaintiff's claims seeking a declaratory judgment that Defendants violated his constitutional rights in the past is retroactive in nature, and therefore, the Eleventh Amendment bars such relief."), report and recommendation accepted by, 2023 WL 3431291 (C.D. Cal. Feb. 21, 2023).

S. Ct. 900 (2022).  "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that '§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity[.]'"  Dittman v. State of Cal., 191 F.3d 1020, 1025-26 (9th Cir. 1999) (citations omitted), cert. denied, 530 U.S. 1261 (2000); Brown, 554 F.3d at 752.  Thus, the Eleventh Amendment bars Plaintiff's Section 1983 claims for damages and retrospective declaratory relief against Defendants in their official capacities.  Will, 491 U.S. at 71; Graham, 473 U.S. at 169-70.

Plaintiff has also failed to state a claim against any Defendant in his or her individual capacity.  First, Plaintiff contends that Defendants violated his right to due process of law when he was "denied [the opportunity] to interview the witness" and because there was no fair and impartial decisionmaker in the prison. (FAC at 5, 10-11).  These vague and conclusory allegations are insufficient to state a viable due process claim against any named individual Defendant.  Iqbal, 556 U.S. at 678; see also Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014) (A "'liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled.  Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.'" (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)); Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984) ("'Conclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'  The plaintiff must 'allege with at least some degree of particularity overt acts which defendants engaged in' that support the plaintiff's claim." (citations omitted)).

Second, the "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Texas v. Cleburne Living Ctr.,

9

473 U.S. 432, 439 (1985); Sampson v. Cnty. of Los Angeles, 974 F.3d 1012, 1022 (9th Cir. 2020). "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); Shooter v. Arizona, 4 F.4th 955, 960 (9th Cir. 2021), cert. denied, 142 S. Ct. 898 (2022). "'Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status.'" Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation and emphasis omitted), cert. denied, 543 U.S. 825 (2004); Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994).

Here, Plaintiff conclusorily asserts he was denied equal protection of the law when he was treated differently because of his race, age, and disabilities. (FAC at 5, 10-12). But "[t]his claim fails because [Plaintiff] has not alleged facts supporting discrimination." Galanti v. Nev. Dep't of Corrs., 65 F.4th 1152, 1158 (9th Cir.), cert. denied, 144 S. Ct. 527 (2023); Iqbal, 556 U.S. at 678; Litmon, 768 F.3d at 1241; Pena, 976 F.2d at 471; see also Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1055 (9th Cir. 2004) (conclusory allegations of an equal protection violation, unaccompanied by any allegations identifying other similarly-situated individuals or alleging how they were treated differently from plaintiff, were insufficient to state an equal protection claim); Jones, 733 F.2d at 649 (conclusory allegations of racial discrimination "unsupported by any facts as to how race entered into any decisions" were insufficient to state a Section 1983 claim).

Third, the Eighth Amendment requires prison officials to protect inmates from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994); Wilk v. Neven, 956 F.3d 1143, 1147 (9th Cir. 2020). "It is not, however, every injury suffered by one prisoner at the hands of another that

1 | translates into constitutional liability for prison officials responsible for the
2 | victim's safety." Farmer, 511 U.S. at 834; Wilk, 956 F.3d at 1147.  Rather, "a
3 | prison official violates an inmate's Eighth Amendment right only if that official is
4 | 'deliberately indifferent' – in other words, if the official is subjectively aware of a
5 | substantial risk of serious harm to an inmate and disregards that risk by failing to
6 | respond reasonably." Wilk, 956 F.3d at 1147; Farmer, 511 U.S. at 847.

7 |      Plaintiff's allegations do not satisfy this standard.  Plaintiff contends he was
8 | injured when another inmate pushed him to the ground and that some or all of the
9 | named Defendants failed to protect him from this attack.  But Plaintiff does not
10 | suggest that any Defendant had reason to believe the other inmate would attack
11 | Plaintiff.  That is, Plaintiff has failed to allege that any named Defendant was aware
12 | of, and ignored, a substantial risk of serious harm to Plaintiff's health.  Farmer, 511
13 | U.S. at 847.  Thus, Plaintiff has failed to state a viable failure to protect claim.
14 | Iqbal, 556 U.S. at 678; Litmon, 768 F.3d at 1241; Pena, 976 F.2d at 471; see also
15 | Jackson v. Ramos, 2019 WL 9270452, *5 (C.D. Cal. Apr. 9, 2019) (Plaintiff's
16 | allegations did not state a failure-to-protect claim when, among other deficiencies,
17 | he did "not allege facts showing that any Defendant subjectively was aware of, and
18 | deliberately disregarded, any information that Plaintiff had been, or would be,
19 | assaulted by his cellmate" and "Plaintiff's speculative, conclusory and unclear
20 | allegations [did] not remedy the insufficiency.").

21 |      Fourth, Plaintiff complains that Defendant Murray called him a "snitch" and
22 | now he has been labeled a "snitch" in Alpha Culinary.  (FAC at 6, 10).  Labeling an
23 | inmate a "snitch" may support an Eighth Amendment claim because it has the
24 | potential to subject that inmate to a substantial risk of harm from other inmates.
25 | Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  "However,
26 | '[w]hile the Ninth Circuit held in Valandingham v. Bojorquez that calling an
27 | inmate a "snitch" may violate one's right to be protected from violence while in
28 | custody, it did so, in part, because the plaintiff subsequently received threats of

violence from other inmates.'" Sauls v. Balli, 2025 WL 605457, *3 (N.D. Cal. Feb. 24, 2025) (quoting Green v. Chamberlain, 2019 WL 3302346, *7 (E.D. Cal. July 23, 2019)). "The Ninth Circuit later held Eighth Amendment claims based on a defendant's words must allege the plaintiff was subjected to retaliation or threats of retaliation at the hands of other inmates" and "must also assert prison officials were aware that their actions exposed the prisoner to a substantial risk of serious harm." Green, 2019 WL 3302346 at *7 (citing Morgan v. MacDonald, 41 F.3d 1291, 1294 (9th Cir. 1994), cert. denied, 515 U.S. 1148 (1995)); Sauls, 2025 WL 605457 at *3. Here, however, Plaintiff's claim is deficient because he does not allege he has been subjected to retaliation or threats of retaliation *after* Defendant Murray called him a "snitch." Morgan, 41 F.3d at 1294; Green, 2019 WL 3302346 at *7.

Fifth, if Plaintiff is attempting to state an Eighth Amendment medical care claim against Nurse Mejia or any other Defendant, he has not done so. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 302 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference in violation of the Eighth Amendment exists when a prison official knows an inmate faces a substantial risk of serious harm to his health and fails to take reasonable measures to abate the risk. Farmer, 511 U.S. at 847; Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of harm exists,' but that person 'must also draw the inference.'" Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837). "'If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" Toguchi, 391 F.3d at 1057 (citation omitted).

Here, Plaintiff's allegations and the documents he attaches to his Complaint demonstrate that after Plaintiff was injured, Nurse Mejia responded to where

Plaintiff fell and escorted Plaintiff to Medical, thoroughly evaluated Plaintiff, and consulted with a physician, who had Plaintiff transported to RUH for further evaluation and treatment.  (FAC at 8; FAC Ex. C).  These actions do not support a deliberate indifference claim, Simmons v. Arnett, 47 F.4th 927, 934 (9th Cir. 2022), and Plaintiff does not otherwise explain how any Defendant was deliberately indifferent to his serious medical needs.

Sixth, to the extent Plaintiff is attempting to raise a First Amendment retaliation claim against Gusman, he has failed to do so.  Plaintiff alleges Gusman is retaliating against him for using the prison grievance system by not calling him to serve food on her shift and instead calling "unducated volunteers." (FAC at 7). A "prisoner can make a viable claim of First Amendment retaliation by alleging five basic elements: '(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" Chavez v. Robinson, 12 F.4th 978, 1001 (9th Cir. 2021) (citation omitted); Shepard v. Quillen, 840 F.3d 686, 688 (9th Cir. 2016).  Here, while "[t]he filing of an inmate grievance is protected conduct[,]" Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Shepard, 840 F.3d at 689, Plaintiff does not allege that his exercise of his First Amendment rights has been chilled or that Gusman's decision not to call him to work on her shift did not reasonably advance a legitimate correctional goal.[6]

Finally, Plaintiff's Motion to Grant Civil Sanction is denied at least because the First Amended Complaint is being dismissed with leave to amend and it is premature as no Defendant has yet appeared in this action.

---

[6] Nor is it clear that not calling Plaintiff to serve food constitutes an "adverse action." Given Plaintiff's allegation that he is totally medically disabled and unable to program (FAC at 12), it is unclear how he could serve food at Alpha Culinary or why he believes Gusman's failure to call him to do so is retaliatory.

For all the reasons set forth herein, Plaintiff's First Amended Complaint must be dismissed with leave to amend and his Motion to Grant Civil Sanction must be denied.

## V. ORDERS[7]

In light of the foregoing, IT IS HEREBY ORDERED that the First Amended Complaint (Dkt. No. 20) is dismissed with leave to amend and Plaintiff's Motion to Grant Civil Sanction (Dkt. No. 22) is denied without prejudice.

IT IS FURTHER ORDERED that within twenty-one (21) days of the date of this Order, Plaintiff must do one of the following:

    1.    File a Second Amended Complaint which cures the pleading defects set forth herein;[8] or

    2.    Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

---

[7] The Court's order herein constitutes a non-dispositive ruling on a pretrial matter. To the extent a party disagrees with such non-dispositive ruling, such party may file a motion for review by the assigned District Judge within fourteen (14) days. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[8] The Clerk is directed to provide Plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate Plaintiff's filing of a Second Amended Complaint if he elects to proceed in that fashion. Any Second Amended Complaint must: (a) be labeled "Second Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original or First Amended Complaint – *i.e.*, it must include all claims on which Plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each Defendant did and how that individual's conduct specifically violated Plaintiff's civil rights; (g) for each claim asserted, specifically identify which Defendants are being sued and in what capacity; (h) not add Defendants or claims that are not reasonably related to the claims asserted in the Complaint; (i) include a title naming all the parties (Fed. R. Civ. P. 10(a)); and (j) set forth "each claim founded on a separate transaction or occurrence . . . in a separate count[.]" Fed. R. Civ. P. 10(b).

      3.   File a Notice of Intent to Stand on the First Amended Complaint, indicating Plaintiff's intent to stand on the First Amended Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action based upon such defects.

**Plaintiff is cautioned that his failure timely to file a Second Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on the First Amended Complaint may be deemed Plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: April 7, 2025

                                                               /s/
                                      Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE

Attachments